**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**DTG OPERATIONS, INC.,**

        **Plaintiff,**

-vs-                                **Case No. 6:10-cv-835-Orl-31GJK**

**MANHEIM REMARKETING, INC.,**
**MANHEIM AUCTIONS, INC., and**
**AMERICAN HOME ASSURANCE**
**COMPANY,**

        **Defendants.**

_____

## ORDER

This matter came before the Court without oral argument upon consideration of the

Motions to Dismiss (Docs. 31 and 32) filed by Defendants Manheim Remarketing, Inc. and

American Home Assurance Company (collectively, "Defendants"),[1] and Plaintiff's, DTG

Operations, Inc. ("DTG"), responses in opposition thereto (the "Response") (Docs. 33 and 34).

## I. Overview

This case arises out of Defendants' alleged failure to defend and indemnify DTG[2] in an

underlying personal injury action. Count I of DTG's Amended Complaint asserts a claim for

contractual indemnification against Manheim Remarketing, Inc. ("Manheim Orlando") or

_____

[1]Manheim Auctions, Inc. did not file or join in the Motions to Dismiss filed by Defendants Manheim Remarketing, Inc. or American Home Assurance Company, (Docs. 31 and 32), and has not filed a notice of appearance or otherwise appeared in this case. Although DTG added Manheim Auctions, Inc. as a defendant in its Amended Complaint, DTG does not appear to have served Manheim Auctions, Inc. and has not filed a return of service.

[2]DTG is a subsidiary of Dollar Thirty Automotive Group, Inc., the car rental company which owns and operates the Dollar Rent A Car and Thrifty brand names.

Manheim Auctions, Inc. ("Manheim Auctions").[3]  (Doc. 26 at 3-4, ¶¶ 15-18).  Count II asserts a

common law claim for indemnification against Manheim Orlando or Manheim Auctions.  (Doc. 26

at 4, ¶¶19-23).  Count III asserts a claim for breach of a contract of insurance against American

Home Assurance Company ("American Assurance").  (Doc. 26 at 5, ¶¶ 24-27).  Count IV appears

to be indistinguishable from Count I and asserts a claim for contractual indemnification against

Manheim Orlando or Manheim Auctions.  (Doc. 26 at 5-6, ¶¶ 29-32).  Finally, Count V asserts a

bad faith claim against American Assurance.  (Doc. 26 at 6, ¶¶ 33-37).

In their Motions, Defendants move to dismiss the foregoing claims pursuant to, *inter alia*,

FED. R. CIV. P. 8 and 12(b)(6).  For the reasons, *infra*, Defendants' Motions will be granted in part

and denied in part, and DTG will be given leave to file a second amended complaint.

## II. Subject Matter Jurisdiction

DTG's Amended Complaint, which was filed subsequent to the removal of this action from

state court, fails to provide the basis for the Court's subject matter jurisdiction.  *See* FED. R. CIV. P.

8(a)(1).  On its face, however, the Amended Complaint asserts that DTG is entitled to more than

$96,916 in damages.  (Docs. 26 at 3, ¶ 14).

With respect to the parties' citizenship, Plaintiff DTG is an Oklahoma corporation with its

principal place of business located in Oklahoma.[4]  (Doc. 2 at 2, ¶ 4). Defendant Manheim Orlando

---

[3]DTG's Amended Complaint fails to distinguish between Manheim Auctions and Manheim Orlando.  Manheim Auctions, Inc. appears to be separate and distinct from Manheim Remarketing, Inc.  *Compare* State of Delaware, Secretary of State, Division of Corporations, Entity Details for Manheim Actions, Inc., https://delecorp.delaware.gov/tin/controller *with* State of Georgia, Secretary of State, Corporation Search for Manheim Remarketing, Inc., http://corp.sos.state.ga.us/corp/soskb/Corp.asp?698127.

[4]*See* Florida Department of State, Document Searches, Inquire by Entity Name, DTG Operations, Inc., http://www.sunbiz.org/scripts/cordet.exe?action=DETFIL&inq_doc_number= P36909&inq_came_from=NAMFWD&cor_web_names_seq_number=0002&names_name_ind=N

is a Delaware corporation with its principal place of business located in Georgia.[5]  (Doc. 2 at 2, ¶

5).  Defendant Manheim Auctions (which, as noted, *supra*, has yet to appear in this case) is a

Delaware corporation; the location of Manheim Auctions' principal place of business is unclear,

but appears to be Georgia.[6]  Defendant American Assurance is a New York corporation with its

principal place of business located in New York.  (Doc. 2 at 2, ¶ 6).

     Based on the foregoing, the amount in controversy exceeds $75,000 and no defendant is a

citizen of the same state as the plaintiff.  The Court therefore has subject matter jurisdiction

pursuant to 28 U.S.C. § 1332.

---

&names_cor_number=&names_name_seq=&names_name_ind=&names_comp_name=DTGOPE
RATIONS&names_filing_type=;  *see also* Oklahoma Secretary of State, Business Records
Department, Business Entities Search, DTG Operations, Inc.,
https://www.sos.ok.gov/corp/corpInformation.aspx?id=1900503794.

    [5]*See* Florida Department of State, Document Searches, Inquire by Entity Name, Manheim
Remarketing, Inc., http://www.sunbiz.org/scripts/cordet.exe?action=DETFIL&inq_doc_number=
F09000003953&inq_came_from=NAMFWD&cor_web_names_seq_number=0000&names_name
_ind=N&names_cor_number=&names_name_seq=&names_name_ind=&names_comp_name=M
ANHEIMREMARKETING&names_filing_type=; see also Georgia Secretary of State, Search for a
Business Entity, Business Entity Name, Manheim Remarketing, Inc.,
http://corp.sos.state.ga.us/corp/soskb/Corp.asp?698127.

    [6]*See* Delaware Department of State, Division of Corporations, Entity Search, General
Information Name Search, Manheim Auctions, Inc., https://delecorp.delaware.gov/tin/
GINameSearch.jsp.

    Assuming DTG serves Manheim Auctions, the Court, if necessary, will direct Manheim
Auctions to verify its principal place of business.

III. **Factual Background**

    A. **The Underlying Litigation**

        On April 16, 2004, DTG entered into a consignment agreement with Manheim Auctions (the "Consignment Agreement," discussed further, *infra*) pursuant to which Manheim Auctions agreed to sell certain of DTG's vehicles at auction.  (Doc. 26-1 at 1).

        On August 25, 2005, a tire on one of DTG's consigned vehicles – a 2005 Dodge Stratus – blew out and the vehicle collided with Doris and Robert McEwan on SR-93 near Ocala, Florida.[7]  (Doc. 26-8 at 4, ¶16).  At the time of the accident, DTG's Dodge Stratus was in the control of Manheim Orlando and was being driven by its employee, Jacquelin Massey.[8]

        On September 5, 2006, the McEwans brought suit against, among others, DTG and Manheim Orlando.[9]  (Doc. 26-8 at 1).  With respect to DTG, the McEwans asserted, in significant part, that DTG was negligent in failing to adequately inspect the vehicle or its tire.  (Doc. 26-8 at

---

     [7]Specifically, DTG alleges that a Manheim Orlando employee "was en route from Ocala, where [Manheim Auctions or Manheim Orlando] had new wheels and tires put on the subject vehicle and returning [sic] to the [Manheim Auctions or Manheim Orlando] property in Orlando.  The rim and tire combination was improper or otherwise defective resulting in a blow out and loss of control of the vehicle. . . ."  (Doc. 26 at 2, ¶ 10).

     [8]Based on DTG's Amended Complaint, it is not entirely clear whether DTG's Dodge Stratus was under the control of Manheim Auctions or Manheim Orlando, or which entity employed Jacquelin Massey.  However, based on the underlying litigation, which is discussed further, *infra*, it appears that Manheim Orlando was in control of Plaintiff's Dodge Stratus and that Jacquelin Massey was Manheim Orlando's employee.

     [9]*See Robert S. McEwan et al. v. Fla. Auto Auction of Orlando, Inc.*, Case No. 42-2006-CA-001953 (Fla. 5th Cir. Ct. 2006) [hereinafter the "underlying litigation" or "*McEwan* litigation"].  The McEwans also asserted various negligence claims against Jacquelin Massey and her employer, (Doc. 26-8 at 5-8, ¶¶ 23-30), as well as product liability and negligence claims against Goodyear Tire & Rubber Company and Performance Distributing, Inc.  (Doc. 26-8 at 8-17, ¶¶ 31-66).

22-25, ¶¶ 83-98).  In the alternative, the McEwans asserted that Manheim Orlando was negligent in failing to adequately inspect the vehicle or its tire.  (Doc. 26-8 at 17-22, ¶¶ 67-82).

After the McEwans sued, DTG demanded that Manheim Orlando (or Manheim Auctions)[10] and American Home Assurance Company ("American Assurance") defend and indemnify DTG. (Doc. 26 at 3, ¶ 12).  Specifically, DTG sought a defense and indemnification from one or both of the Manheim entities pursuant to its Consignment Agreement with Manheim Auctions, and from American Assurance pursuant to a CGL, automobile or garage keepers' insurance policy (the "Insurance Policy," discussed further, *infra*) that American Assurance issued to Manheim Auctions.  For nearly two years, the Manheim entities and American Assurance refused to provide DTG with a defense.  It was not until July 2008 – after DTG allegedly incurred more than $96,000 in defense costs – that one of the Manheim entities (apparently Manheim Orlando) finally agreed to defend DTG.[11]  (Doc. 26 at 3, ¶ 14).

On March 26, 2010, DTG brought the instant suit, seeking to recoup its defense costs in the underlying litigation – i.e., prior to Manheim Orlando's assumption of its defense – from Manheim Orlando and American Assurance.  (Doc. 1).  With the exception of its common law claim for indemnification and bad faith claim, DTG's right to relief is predicated on two contracts: the Consignment Agreement and the Insurance Policy.  (Doc. 26).

---

[10]Again, Plaintiff's Amended Complaint is ambiguous as to which Manheim entity Plaintiff sought a defense or indemnification.

[11]As of August 17, 2010, the *McEwan* ligation remained pending against DTG.  *See* Marion County Clerk of the Circuit Court, Case Search, Case No. 42-2006-CA-001953-AXXX-XX, http://casesearch.marioncountyclerk.org/index.cfm?FuseAction=Home.CaseView&Case_id=1090 308&CFID=1269503&CFTOKEN=73204010.

American Assurance does not ever appear to have agreed to defend DTG or to shoulder the costs of DTG's defense with Manheim Orlando.

**B.  The Consignment Agreement Between DTG and Manheim Auctions**

In pertinent part, the Consignment Agreement, which DTG attached to its Amended

Complaint, provides:

> 6.  Indemnity – Theft, Conversion or Damages.  Auctioneer [i.e., Manheim Auctions][12] shall be responsible to Consignor [i.e., DTG] for, and indemnify and hold it harmless from, any theft or conversion of [sic] or loss or damage to any vehicles or any part thereof after the same has been consigned to Auctioneer and until sold to a purchaser at auction. . . .  Auctioneer shall not be responsible for loss or damage resulting from Acts of God such as, but not limited to hail, windstorms, and lightning, for mechanical failures not caused by Auctioneer, its agents or employees or for acts or omissions of Consignor, its agents or employees. . . .

> 9.   Insurance/Risk of Loss.  While Consignor's vehicles are in Auctioneer's custody and control, Auctioneer agrees to provide General Liability Insurance with limits of not less than $1 million [sic] Bodily Injury and Property Damage combined per occurrence; Automobile Liability Insurance with limits of not less than $1 million Bodily Injury and Property Damage combined; Statutory Workers' Compensation Insurance, including Employers' Liability Insurance, with a limit of $1 million per Accident; and Garagekeepers [sic] Legal Liability Insurance (Comprehensive and Collision) with a limit of not less than $1 million per location.  Such insurance policies shall name Consignor as an additional insured.  Auctioneer shall provide to Consignor, upon request, certificates of insurance evidencing the aforesaid coverage, which certificates shall provide that the policies under which insurance is effected may not be canceled or materially altered without thirty (30) days' prior written notice to Consignor.

> 12.   Miscellaneous. . . .

> (f)  The terms of this Agreement shall be governed by and construed in accordance with the laws of the State of Georgia without giving effect to the conflict of laws principles thereof.

(Doc. 26-1 at 2-3).

Manheim Orlando is not a party to the Consignment Agreement and DTG has not alleged

that Manheim Auctions assigned the Consignment Agreement to Manheim Orlando or that

Manheim Orlando is merely an *alter ego* of Manheim Auctions.

---

[12]The Consignment Agreement expressly defines the term "Auctioneer" as including Manheim Auctions only.  (Doc. 26-1 at 1).

**C.  The Insurance Policy**

The Insurance Policy issued by American Assurance to Manheim Auctions, which DTG also attached to its Amended Complaint, is 434 pages in length.  (Docs. 26-2, 26-3, 26-4, 26-5, 26-6 and 26-7).  Although the Amended Complaint does not cite a single provision of the insurance policy, based on American Assurance's Motion and DTG's Response, the following forms, endorsements and definitions appear pertinent to DTG's claims:

GARAGE DECLARATIONS

ITEM ONE    Named Insured & Mailing Address[:]
            **MANHEIM AUCTONS, INC**. . . .

POLICY PERIOD:  From 01/01/2005 to 01/01/2006. . . .

ITEM TWO    SCHEDULE OF COVERAGE AND COVERED AUTOS. . . .

        FORMS SCHEDULES. . . .

POLICY NO.  CA 204-50-08. . . .

CA0005 (1001)  GARAGE COVERAGE FORM. . . .
CA2048 (0299) DESIGNATED INSURED. . . .

**GARAGE COVERAGE FORM [CA 0005 (1001)]**. . . .

Through this policy the words "you" and "your" refer to the Named Insured shown in the Declarations.  The words "we", "us" and "our" refer to the Company providing this insurance. . . .

[Section II – A. Coverage – 3. Who Is An Insured]

a.  The following are "insureds" for covered "autos":

(1)  You for any covered "auto".

(2)  Anyone else while using with your permission a covered "auto" you own, hire or borrow. . . .

(3)  Anyone liable for the conduct of an "insured" described above but only to the extent of that liability. . . .

**DESIGNATED INSURED [ENDORSEMENT CA 2048 (0299**)]

THIS ENDORSEMENT CHANGES THE POLICY. . . .

This endorsement identifies person(s) or organization(s) who are "insureds" under the Who Is An Insured Provision of the Coverage Form.  This endorsement does not alter coverage provided in the Coverage Form. . . .

Name of Person(s) or Organization(s):
AS REQUIRED BY WRITTEN CONTRACT. . . .

Each person or organization shown [above] is an "insured" for Liability Coverage, but only to the extent that person or organization qualifies as an "insured" under the Who Is An Insured Provision contained in Section II of the Coverage Form. . . .

**ENDORSEMENT # 007**. . . .

ADDITIONAL NAMED INSURED. . . .

Section II A.  1  Who Is An Insured, shall include the following:

Any joint venture, co-venture, joint lease, joint operating agreement, partnership, limited liability company (hereinafter called joint venture) in which a Named Insured owns a participating interest therein, participates in the profits thereof, or for whom a Named Insured has contractually accepted responsibility to provide insurance; but only to the extent of the Named Insureds [sic] liability resulting from such interest, participation or contractual obligation.

(Doc. 26-2 at 3, 11, 16-17, 36 and 55-56; Doc. 26-4 at 1; Doc. 26-7 at 51, 53 and 58).

With respect to coverage, Section II of the Garage Coverage Form provides:

2.  "Garage Operations" – Covered "Autos"

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property" damage to which this insurance applies, caused by an "accident" and resulting from "garage operations" involving ownership, maintenance or use of covered "autos". . . .

We have the right and duty to defend any "insured" against a "suit" asking for such damages. . . .

(Doc. 26-2 at 56).

**IV. Applicable Law**

    **A. Motion to Dismiss**

In ruling on a motion to dismiss, the Court must view the complaint in the light most favorable to the plaintiff, *see, e.g.*, *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994), and must limit its consideration to the pleadings and any exhibits attached thereto.[13] Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411,421 (1969). However, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing Fed. R. Civ. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr.for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). However, a plaintiff's obligation to provide the grounds for his or her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-555 (2007). The complaint's factual allegations "must be enough to raise a right to relief above the speculative

---

[13]Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control. *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) (citations and quotations omitted).

level," *Id.* at 555, and cross "the line from conceivable to plausible." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1950-1951 (2009).

### B.  Contractual Indemnification Under Georgia Law

In Georgia, indemnity contracts are strictly construed against the indemnitee and every presumption is against an intention to indemnify.  *See*, *e.g.*, *Serv. Merchandise Co. v. Hunter Fan Co.*, 274 Ga. App. 290, 292, 617 S.E.2d 235, 237-38 (2005); *see also* 7 GA. JUR. Contracts § 6:59 (current through May 2010).  The intent of the parties and the scope of the indemnification provision are derived from the language of the contract.  *Hunter Fan Co.*, 274 Ga. App. at 292, 617 S.E.2d at 237 ("The language which the parties have used will be looked to for the purpose of finding [the parties' intent], which . . . once ascertained will prevail over all other considerations, in determining the nature of the agreement").  The scope of an indemnity agreement is a question of law for the court.  *George L. Smith II Ga. World Congress Ctr. Auth. v. Soft Comdex, Inc.*, 250 Ga. App. 461, 462, 550 S.E.2d 704, 705 (2001) (citations omitted).

### C.  Insurance Under Florida Law

In Florida, an insurer's duty to defend is distinct from, and broader than, the duty to indemnify.  *Lime Tree Vill. Cmty. Club Ass'n, Inc. v. State Farm Gen. Ins. Co.*, 980 F.2d 1402, 1405 (11th Cir. 1993) (citing *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So. 2d 810, 813-14 (Fla. 1st DCA 1985)).  The duty to defend is determined by examining the allegations in the underlying complaint against the insured.  *Id*. (citing *Nat'l Union Fire Ins. Co. v. Lenox Liquors, Inc.*, 358 So. 2d 533, 536 (Fla. 1977)); *see also State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1077 n. 3 (Fla. 1998).  The insurer must defend when the complaint alleges facts that fairly and potentially bring the suit within coverage.  *Jones v. Fla. Ins. Guar.*

*Ass'n, Inc.*, 908 So. 2d 435, 442-43 (Fla. 2005).  The allegations in the complaint control even

when the actual facts are inconsistent with the allegations in the complaint.  *Id*. at 443.

**V.  Discussion**

    **A.  Claims Against Manheim Orlando (or Manheim Auctions)**

        *Count I – Contractual Indemnification*

Count I asserts that "Manheim" (i.e., either Manheim Orlando or Manheim Auctions) had a

contractual duty under the Consignment Agreement to defend and indemnify DTG in the *McEwan*

litigation and that "Manheim" failed to do so.

Manheim Orlando contends, *inter alia*, that Count I must be dismissed inasmuch as it was

and is not a party to the Consignment Assignment.  (Doc. 31 at 6).  Furthermore, even assuming

that Manheim Orlando were a party to the Consignment Agreement, under the plain and

unambiguous language of the Consignment Agreement, Manheim Orlando contends that it had no

duty to defend or indemnify DTG for bodily injury claims.  (Doc. 31 at 7).

In its Response, DTG failed to address Manheim Orlando's status as a party to the

Consignment Agreement.  Instead, it simply argues that Section 6 of the Consignment Agreement

establishes Manheim Orlando's duty to defend.  (Doc. 33 at 3-4).

Upon review, Count I fails to state a claim upon which relief can be granted.  First,

Manheim Orlando is not a party to the Consignment Agreement.  Second, and more importantly,

neither Section 6 nor any other provision of the Consignment Agreement required any Manheim

entity to defend or indemnify a bodily injury claim arising out of DTG's supposed negligence (or,

for that matter, any bodily injury claim).  In pertinent part, Section 6 states that Manheim Auctions

will indemnify DTG for "any theft or conversion of [sic] or loss or damage *to any vehicles* or any

part thereof."  (Doc. 26-1 at 2) (emphasis added).  Apart from this provision, which is clearly

limited to property damage to DTG's vehicles, nothing in the Consignment Agreement imposes any indemnification obligation on the "Auctioneer." In the absence of any other indemnification provision contained in the Consignment Agreement, Count I fails as a matter of law.

Accordingly, Count I will be dismissed with prejudice as to Manheim Orlando.

*Count II – Common Law Indemnity*

To state a claim for common law indemnity under Florida law, a plaintiff must satisfy a two-prong test: (1) the party seeking indemnification must be wholly without fault, and its liability must be vicarious and solely for the wrong of another; and (2) indemnification can only come from a party who was at fault. *Dade County Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 642 (Fla. 1999).

Count II fails to state a claim upon which relief can granted. As noted, *supra*, with respect to the entire Amended Complaint, Count II is ambiguous inasmuch as it fails to distinguish between Manheim Orlando and Manheim Auctions (or otherwise establish that these entities are, in fact, one in the same or that they are sufficiently interrelated). Furthermore, it is far from clear that either Manheim entity was at fault or that DTG was wholly without fault. The *McEwan* litigation remains pending and, as Manheim Orlando noted in its Motion, (Doc. 31 at 10), a third party, Performance Distributing, Inc., ultimately may be found liable for the McEwan's injuries. Count II, therefore, does not yet appear to be ripe and DTG may lack standing.

Accordingly, Count II will be dismissed without prejudice.

*Count IV – "Breach of Contract"*

Count IV is virtually indistinguishable from Count I and, other than asserting that Manheim Orlando (or Manheim Auctions) breached the Consignment Agreement "by failing to defend and indemnify DTG," (Doc. 26 at 5, ¶ 31), Count IV fails to allege the manner in which

Manheim Orlando breached the Consignment Agreement.  In short, Count IV plainly fails to provide Manheim Orlando with adequate notice of DTG's claim.  Accordingly, Count IV will be dismissed without prejudice.

### B.  Claims Against American Assurance

*Count III – Breach of Insurance Contract*

Count III asserts that DTG was an insured under the Insurance Policy and that American Assurance breached its duty to defend DTG in the *McEwan* litigation.  (Doc. 26 at 5, ¶¶ 24-25).

In its Motion, American Assurance contends that, based on the underlying complaint in the *McEwan* litigation and the plain language of the Insurance Policy, DTG is not an insured and, as a matter of law, DTG has therefore failed to state a claim for relief.  (Doc. 32 at 3).  In its Response, DTG relies on a "Certificate of Liability Insurance," (Doc. 26-2 at 1) and Endorsement #007 to the Insurance Policy,[14] (Doc. 26-7 at 58), to establish that it is an insured under the Insurance Policy. (Doc. 34 at 3-4).

Upon review, Count III fails to state a claim upon which relief can be granted.  To recover against American Assurance, DTG must plausibly state that it is an insured.  The "Certificate of Liability Insurance" is not a part of the Insurance Policy and clearly disclaims that it does not confer any "rights upon the certificate holder" or otherwise "amend, extend or alter the coverage" provided by the policy.  (Doc. 26-2 at 1)).  Furthermore, with respect to Endorsement #007, DTG

_____

[14]As noted, *supra*, Endorsement #007 provides, in pertinent part, that an "insured" under the Insurance Policy may also include:

> Any joint venture . . . in which a Named Insured [i.e., Manheim Auctions] owns a participating interest therein, participates in the profits thereof, of for whom a Named Insured has contractually accepted responsibility to provide insurance; but only to the extent of the Named Insureds [sic] liability resulting from such interest, participation or contractual obligation.

(Doc. 26-7 at 58).

and Manheim Auctions are not alleged to have participated in any sort of "joint venture, co-venture, joint lease, joint operating agreement, partnership or limited liability company. . . ." (Doc. 26-7 at 58).  Even assuming, however, that the Consignment Agreement could be construed as some sort of joint venture, Endorsement #007 would apply only if DTG's liability was derivative of Manheim Auctions's liability in the underlying action (i.e., "but only to the extent of the Named Insureds [sic] liability resulting from such interest, participation or contractual obligation."  (Doc. 26-7 at 58)).  The McEwans have sued DTG for its own negligence – not on the basis of vicarious liability.[15]  Endorsement #007 is therefore inapposite.

Accordingly, Count III will be dismissed without prejudice.

*Count V – Bad Faith*

Inasmuch as DTG has failed to plausibly establish that is an insured – let alone that there is coverage under the Insurance Policy – Count V fails to state a claim upon which relief can be granted.  *See*, *e.g.*, *OneBeacon Ins. Co. v. Delta Fire Sprinklers, Inc.*, 898 So. 2d 113, 115 (Fla. 5th DCA 2005) (noting that if there is no coverage, there can be no claim for bad faith arising out of insurer's failure to settle).  Count V will therefore be dismissed without prejudice.

**VI. Conclusion**

For the foregoing reasons, it is

**ORDERED** and **ADJUDGED** that:

1.  The Motions to Dismiss (Docs. 31 and 32) filed by Defendants Manheim Remarketing, Inc. and American Home Assurance Company are **GRANTED** in part and **DENIED in part**;

---

[15]Furthermore, Manheim Auctions was not named as a party in the McEwan's Complaint. (Doc. 26-8).  While "Manheim Auctions Government Services, Inc." was named as a defendant, it is unclear whether – or how – this entity is related to Manheim Auctions.  Accordingly, even if DTG's liability was predicated solely on the liability of "Manheim Auctions Government Services, Inc.," DTG has failed to adequately allege that Manheim Auctions Government Services, Inc. was a named insured under the Insurance Policy.

2.   Count I of the Amended Complaint is **DISMISSED** with prejudice as to Defendant

Manheim Remarketing, Inc., and Counts II through V of the Amended Complaint are

**DISMISSED** without prejudice; and

3.   By no later than **Friday, September 3, 2010**, Plaintiff DTG Operations, Inc. shall be

permitted to file a second amended complaint that, *inter alia*, addresses the deficiencies identified

in this Order.[16]

**DONE** and **ORDERED** in Chambers, Orlando, Florida on August 18, 2010.

Copies furnished to:

Counsel of Record
Unrepresented Party

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

---

[16]DTG is cautioned that its second amended complaint must explicitly delineate any claims against the Manheim entities and otherwise comply with Fed. R. Civ. P. 8.  Furthermore, if DTG wishes to pursue its claim(s) against Manheim Auctions, Inc., it is directed to expeditiously serve same and file a return of service with the Court.